2013 Ark. 231

**BARTON LAND SERVICES, INC.; Martha Thomas; Dee Thomas; Theresa L. Townsend; Tanya Thomas; Guenvear Ward McKim; Bobby R. Ward; Nina Ward Johnston; Nina Ward Johnston by her Attorney–in–Fact, Bobby R. Ward; Frankie A. Ward Glover; Frankie A. Ward Glover by his Attorney–in–fact, Bobby R. Ward, Appellants**

v.

**SEECO, INC; Donald Lea Stanton; Linda Stanton; Janet Stanton Farrar; Cheryl Stanton Hamlin; Alan Stanton; Brian J. Galka; Max Foster; Rachel Galka; Anne Stanton Yust; David Taggart; Jean Stanton; Sandra Stanton Strickland; Daniel Thomas Stanton; James Tagg, Appellees.**

No. CV–12–742.

Supreme Court of Arkansas.

May 30, 2013.

---

Stephen C. Gardner, P.A., by: Stephen C. Gardner, Russellville, for appellant Ward Group.

Peel Law Firm, P.A., Russellville, by: Richard L. Peel and Robert M. Veach, for appellant Barton Group.

Perkins & Trotter, PLLC, Little Rock, by: G. Alan Perkins and Kimberly D. Logue, for appellee Seeco, Inc.

Morgan Law Firm, P.A., by: M. Edward Morgan, Clinton, for appellee Stanton Group.

COURTNEY HUDSON GOODSON, Justice.

Appellants Barton Land Services, Inc., and the heirs, successors, and assigns of grantors of a mineral deed appeal the Van Buren County Circuit Court's grant of summary judgment in favor of appellees, SEECO, Inc., and the heirs, successors, and assigns of the deed's grantee. For reversal, appellants argue that the circuit court erred in granting summary judgment and in finding that the deed conveyed one hundred percent of the grantors' mineral interest in three tracts of land in Van Buren County. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(b)(5) (2012), as this appeal presents a significant issue needing clarification or development of the law. We affirm.

In the 1920s and early 1930s, J.S. Martin, individually and as trustee for a group of apparent investors, leased minerals in the region now known as the Fayetteville Shale. Martin allegedly later attempted to buy an interest in the minerals beneath the land of these surface owners and lessors. In 1927, R.F. Thomas executed two oil-and-gas leases to J.S. Martin. On June 25, 1929, Thomas and his wife, Amy Thomas, as grantors, executed a warranty deed and an oil, gas, and mineral royalty instrument conveying a mineral interest to Martin, as grantee.

The Thomas–Martin mineral deed ("1929 mineral deed") is a blank-form deed. However, the portion of the mineral deed pertaining to the percentage of the mineral interest to be conveyed was left blank. The language of the deed states in part as follows:

> [R.F. Thomas and Amy Thomas] ... do hereby grant, bargain, sell and convey unto the said J.S. Martin Trustee and to his heirs and assigns forever, an undivided —— interest in and to all the oil, gas and other minerals, in, under and upon the following described lands lying within the County of Van Buren and State of Arkansas, to-wit: [description of the three tracts] containing 221.35 acres, more or less.

Subsequent to the 1929 mineral deed, Amy Thomas, then a widow, conveyed the surface of the three tracts, excepting from the conveyance "all oil, gas and other minerals," to Cleatus A. Owens and Lorene Owens and Carl and Viller Stacks. From 1929 to the present, the land passed through many hands.

Appellee SEECO owned oil-and-gas leases and possessed rights, pursuant to the orders of the Arkansas Oil and Gas Commission ("AOGC"), authorizing it to explore for and develop minerals from the three tracts of land in Van Buren County. On January 10, 2011, SEECO filed an interpleader action to determine ownership of the oil, gas, and minerals in the land. In its complaint, SEECO alleged that it owned oil-and-gas leases from the numerous parties and from the integration of mineral interests by the AOGC and that it was the authorized party to explore for and develop minerals from the land. In its prayer for relief, SEECO requested that the circuit court quiet and confirm title in the appellees and that the court find that three limited-warranty deeds, arising from historic mineral-tax forfeitures and issued in 2005 from the Commissioner to the Lewises, be declared void.

After the parties answered SEECO's complaint, seven motions for summary judgment were filed in the case by separate defendants. Those separate defendants consisted of (1) the "Lott Group," which included Brian E. Quarles; James J. Restor; Robert Wade Steinbriede; Mary Walcott Steinbriede; Hogeye Investments, LLC; Goldfinger, LLC; Heti, LLC; Melton Oil & Gas, LLC; Cross Creek Resources, LLC; WGC I, LLC; Spawn Group, LLC; BOCHAP, LLC; AHL, LLC; W & W I, LLC; White Hawk Exploration, LLC; BGW I, LLC; Handwerker Clean Energy, LLC; Harry H. Lott, Jr.; and Renelda Lott; (2) the "Stanton Group," which included Donald Lea Stanton; Linda Stanton; Janet Stanton Farrar; Cheryl Stanton Hamlin; Alan Stanton; Brian J. Galka; Max Foster; Rachel Galka; Anne Stanton Yust; David Taggart; Jean Stanton; Sandra Stanton Strickland; Daniel Thomas Stanton; James Taggart; Marcia Taggart Smoke; and Linda Taggart Nielson; (3) the "Ward Group," which included Bobby R. Ward; Nina Ward Johnston; Bobby R. Ward, attorney-in-fact for Nina Ward Johnston; Frankie A. Ward Glover; Bobby R. Ward, attorney-in-fact for Frankie A. Ward Glover; John F. Hafner & Associates; and Xisto Properties, LLC; (4) A.J. and Doris Lewis; (5) the "Barton Group," which included Barton Land Services, Inc.; Martha Thomas; Dee Thomas; Guenvear Ward McKim; Theresa L. Townsend; and Tanya Thomas; and (6) intervenor Fayetteville Shale Resources, LLC. SEECO also filed a motion for partial summary judgment. In their motions for summary judgment, SEECO and Martin's heirs, the Lott Group and the Stanton Group, argued that the 1929 mineral deed conveyed one hundred percent of the mineral interest to J.S. Martin. However, the Thomases' heirs, known as the Ward Group and the Barton Group, and Fayetteville Shale Resources asserted that the deed was void because the Thomases never specified what percentage of the minerals they intended to convey.

On March 27, 2012, the circuit court conducted a hearing on the seven cross-motions for summary judgment and subsequently entered an order, granting summary-judgment motions filed by the Lott Group, the Stanton Group, and SEECO and denying summary-judgment motions filed by the Ward Group, the Lewises, the Barton Group, and Fayetteville Shale. Specifically, the circuit court ruled that the 1929 mineral deed, even with a blank left empty in the granting clause, conveyed

one hundred percent of the mineral interest. The court also ruled that the Lewises' tax deeds were invalid and that the Lewises had perfected title to the mineral-interest rights by adverse possession.

On June 6, 2012, the circuit court entered a final order regarding the ownership of the oil, gas, and minerals. The order states in part as follows:

> 3. Title in and to 100% of the mineral interests in Tract 1, Tract 3, and Tract 4, including without limitation oil and natural gas, are hereby quieted and confirmed in the heirs, successors, and assigns of J.S. Martin, the grantee of that certain Mineral Deed from R.F. Thomas and Amy Thomas, Grantors, to J.S. Martin Trustee, Grantee
>
> . . . .
>
> 4. Title in and to 100% of the surface estate and the mineral interests in Tract 2, including without limitation oil and natural gas, are hereby quieted and confirmed in Separate Defendants, A.J. Lewis and Doris Lewis.
>
> 5. The limited warranty deeds, arising from historic mineral tax forfeitures, issued in 2005 from the Commissioner of State Lands to A.J. Lewis and Doris Lewis, H/W, each for a 1/4 mineral interest, that purport to convey mineral interests in Tracts 1, 2, or 3 . . . are void.

Appellants, known as the Barton Group, the Ward Group, and Fayetteville Shale, timely filed a joint notice of appeal and amended joint notice of appeal. Appellees include the Stanton Group as Martin's heirs and successors in interest, and SEECO.[1] From the circuit court's May 18 and June 6, 2012 orders, appellants now bring their appeal.

For the sole point on appeal, appellants argue that the circuit court erred in granting summary judgment in favor of appellees by construing the 1929 mineral deed to convey one hundred percent of the mineral interest to appellees. Specifically, appellants contend that the 1929 mineral deed was void because the description of the interest was so vague that it was unenforceable. In support of their position, appellants emphasize the language stating that the grantors conveyed "an undivided —— interest in and to all of the oil, gas and other minerals" without filling in the blank and to specify the amount of interest to be conveyed. Further, appellants assert that this court should rely on Arkansas caselaw in its review. Appellants maintain that the circuit court erred in relying on *Beaton v. Pure Oil Co.*, 483 P.2d 1145 (Okla.1971), as the basis for granting summary judgment.

In response, SEECO argues that the circuit court properly found that the 1929 mineral deed effectively conveyed one hundred percent of the mineral interest at issue. SEECO asserts that Arkansas authority supports the circuit court's interpretation of the 1929 mineral deed and that the circuit court properly found the reasoning of *Beaton* to be persuasive. Similarly, the Stanton Group argues that the circuit court did not err in its ruling because the 1929 mineral deed was not void and contained a certain description of the interest to be conveyed; that Arkansas law supported the circuit court's decision; that the circuit court properly relied on *Beaton*; and that subsequent oil-and-gas

---

1. While they do not specify which motion for summary judgment they are appealing, appellants can only challenge the circuit court's grant of the motions for summary judgment filed by the Lott Group, the Stanton Group, and SEECO. *See Jaggers v. Zolliecoffer*, 290 Ark. 250, 718 S.W.2d 441 (1986). The Lott Group did not file a brief with this court. The Stanton Group and SEECO filed separate appellees' briefs.

leases did not impact the scope of the 1929 mineral-interest conveyance.

▪ Upon reviewing a circuit court's decision on a summary-judgment motion, we typically would examine the record to determine if genuine issues of material fact exist. *Progressive Halcyon Ins. v. Saldivar*, 2013 Ark. 69, 2013 WL 655234. However, in the present case, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether appellees were entitled to judgment as a matter of law. *Schultz v. Butterball, LLC*, 2012 Ark. 163, 402 S.W.3d 61.

▪ This case involves the construction of a mineral deed purporting to convey "an |₇undivided —— interest" in the Thomases' mineral rights to Martin. The basic rule in the construction of deeds, as with other contracts, is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language of the deed when not contrary to settled principles of law and rules of property. *Jenkins v. Simmons*, 241 Ark. 242, 407 S.W.2d 105 (1966). We examine the deed from its four corners for the purpose of ascertaining that intent from the language employed. *Chicago, R.I. & P.R. Co. v. Olson*, 222 Ark. 828, 262 S.W.2d 882 (1953). Further, we gather the intention of the parties, not from some particular clause, but from the whole context of the agreement. *Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974). Every part of the deed should be harmonized and reconciled so that all may stand together and none be rejected. *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973). We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful. *Coffelt v. Decatur*

*Sch. Dist.*, 212 Ark. 743, 208 S.W.2d 1 (1948).

▪ In Arkansas, we recognize a presumption that a grantor intends to convey his entire interest by his deed, and such is the effect of a deed which does not limit the interest conveyed. *Patterson v. Miller*, 154 Ark. 124, 241 S.W. 875 (1922). A grantor may convey a particular interest, and, when this is done, only that interest is conveyed, and the grantor reserves to himself all he has not conveyed. *Id.* (citing *Cocks v. Simmons*, 55 Ark. 104, 17 S.W. 594 (1891)). In *Griffith v. Ayer–Lord Tie Co.*, 109 Ark. 223, 159 S.W. 218 (1913), this court stated that in order to convey legal title, it was absolutely necessary that there be words |₈expressing the fact of a sale or transfer of the title, such as the words "grant, bargain and sell." These longstanding principles in Arkansas are reflected in the following applicable statutes. Arkansas Code Annotated section 18–12–102(b) (Repl.2003) provides in pertinent part:

> The words, "grant, bargain and sell" shall be an express covenant to the grantee, his or her heirs, and assigns that the grantor is seized of an indefeasible estate in fee simple . . . unless limited by express words in the deed.

Similarly, Arkansas Code Annotated section 18–12–105 (Repl.2003) states that "all deeds shall be construed to convey a complete estate of inheritance in fee simple unless expressly limited by appropriate words in the deed."

▪ In construing the 1929 mineral deed, we interpret the foregoing statutes. The basic rule of statutory interpretation is to give effect to the intent of the legislature. *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language

used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*

In the present case, the language of sections 18–12–102 and 18–12–105 dictate that the 1929 mineral deed conveyed the Thomases' entire mineral interest to Martin. Section 18–12–102(b) states that the term " 'grant, bargain and sell' shall be an express covenant to the grantee, his or her heirs, and assigns that the grantor is seized of an indefeasible estate in fee simple ... unless limited by express words in the deed." We have long held that a "fee simple," as referenced in these statutes, is the greatest estate or interest owned by a person to convey. *Moody v. Walker*, 3 Ark. 147 (1840). Similarly, section 18–12–105 provides that "all deeds shall be construed to convey a complete estate of inheritance in fee simple unless expressly limited by appropriate words in the deed." This statutory language requires an interpretation that the Thomases conveyed one hundred percent of their mineral interest to Martin. Further, the 1929 mineral deed contains no language that appears to limit the Thomases' conveyance to Martin as a complete estate in fee simple. This conclusion comports with our caselaw that a grantor intends to convey his entire interest by his deed when the grantor does not limit the interest conveyed. *Patterson, supra.* Thus, we conclude that sections 18–12–102 and 18–12–105 support the circuit court's ruling that the Thomases conveyed their entire mineral interest to Martin.

On appeal, appellants assert that the circuit court erroneously relied on *Beaton, supra,* for the proposition that the 1929 mineral deed validly conveyed to J.S. Mar-

tin a one hundred percent mineral interest. In *Beaton,* the Oklahoma Supreme Court was presented with the question of whether an "unfilled blank" in a mineral warranty deed negated the validity of the conveyance for lack of a written description. Citing an Oklahoma statute, the Oklahoma Supreme Court held that the warranty deed at issue purported to convey an undivided interest of four grantors. The court stated as follows:

> The mineral warranty deed conveys whatever interest the grantors own unless limited or reserved. Because the grantors did not fill in a blank in the deed pertaining to their interest only, does not mean that they did not convey their entire interest. It is more persuasive to conclude from the fact of conveyance that they intended to convey all of their undivided interest, rather than striking down an otherwise valid conveyance.

*Beaton,* 483 P.2d at 1147. Additionally, when considering the intent of the parties, the court reviewed the applicable statute and the additional qualifying language, "containing 40 acres," in the description clause. Based on these factors, the Oklahoma court held that the grantors conveyed all of their interest in the minerals in the described forty-acre tract. *Id.* at 1148. Here, appellants attempt to distinguish *Beaton, supra,* by arguing that the Oklahoma Supreme Court relied on an Oklahoma statute that allows for the conveyance "to the grantee ... the whole interest in the grantor." *Beaton, supra* (citing 16 O.S. 1961, section 19). However, like the Oklahoma court, we hold that the language of the foregoing Arkansas statutes, as well as our caselaw, suggest that the 1929 mineral deed is unambiguous and conveys the Thomases' entire mineral interest to Martin.

Further, appellants, citing *W.T. Carter & Brothers v. Ewers,* 133 Tex. 616, 131 S.W.2d 86 (1939), in support of their argument, assert that the 1929 mineral deed is void for uncertainty. Unlike the deed in *Carter, supra,* the 1929 mineral deed in the case at bar is a blank-form deed and contains an adequate metes-and-bounds description of the property interest conveyed. Upon our review, we conclude that the *Carter* case is inapplicable to the case at bar. Appellants also claim that the 1929 mineral deed is void because various items are missing from the deed. Specifically, they list that (1) Thomas failed to write his name as the grantor; (2) he inserted "8th" and "March" in the blanks for the grantors; (3) he provided two different names for Martin as J.S. Martin Trustee and J.S. Martin; (4) he failed to state the name of the grantee in the habendum clause; (5) the deed states, "undivided —— interest"; and (6) Thomas left thirteen spaces blank. With this argument, we are mindful of our well-established rule that the intention of the parties is to be gathered, not from the particular words and phrases, but from the whole context of the agreement. *Asbury Automotive Used Car Ctr. v. Brosh,* 2009 Ark. 111, 314 S.W.3d 275. Here, these alleged deficiencies contained in the 1929 mineral deed do not overcome the grantors' intent to convey one hundred percent of their mineral interest, and the thirteen blank spaces in the deed do not undermine that intent. Thus, these alleged deficiencies do not render the 1929 mineral deed void for uncertainty. For these reasons, we hold as a matter of law that the circuit court did not err in granting summary judgment.

Lastly, appellants note that a subsequent 1930 warranty deed, listing Martin as the grantor and Ethel Dora Lee, his secretary, as the grantee, references two 1927 oil-and-gas leases between the Thomases and Martin. Appellants argue that, if the Thomases had conveyed their full mineral interest to Martin in the 1929 mineral deed, then the 1930 warranty deed would not have been subject to these 1927 oil-and-gas leases.

We have stated that because a deed is the final expression of the parties' agreement, it cannot be varied or modified by parol evidence. *Thackston v. Farm Bureau Lumber Corp.,* 212 Ark. 47, 204 S.W.2d 897 (1947). If a deed is clear and unambiguous, then it cannot be set aside by parol proof of the acts of the parties, either before or after the conveyance of the deed. *Higginbottom v. Higginbottom,* 247 Ark. 694, 447 S.W.2d 149 (1969). Here, given our conclusion that the 1929 mineral deed is unambiguous, we hold that the circuit court did not err by refusing to consider the parol evidence of the subsequent 1930 Martin–Lee deed. Accordingly, we affirm the circuit court's ruling.

Affirmed.

BAKER, J., not participating.