

# SUPREME COURT OF ARKANSAS

**No.** CV-16-277

|  |  |
|---|---|
| JANE LIPSCOMB STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF MADOLENE STONE, DECEASED; BENJAMIN HICKS STONE III; RUTH STONE JONES; MARGARET STONE COTTER; HARRIET STONE EVANS; PATRICIA MARTY STONE; EDWARD DURELL STONE III; MARIA FRANCESCA STONE; FIONA CAMBPELL STONE; AND MATTHEW WHELPLEY APPELLANTS | **Opinion Delivered:** March 16, 2017 APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CIV2014-1288-1] HONORABLE CRISTI BEAUMONT, JUDGE |
| V. |  |
| WASHINGTON REGIONAL MEDICAL CENTER AND CITY OF FAYETTEVILLE, ARKANSAS APPELLEES | <u>AFFIRMED; COURT OF APPEALS OPINION VACATED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellants Jane Lipscomb Stone, individually and as executrix of the estate of

Madolene Stone, deceased; Benjamin Hicks Stone III; Ruth Stone Jones; Margaret Stone

Cotter; Harriet Stone Evans; Patricia Marty Stone; Edward Durell Stone III; Maria

Francesca Stone; Fiona Campbell Stone, and Matthew Whelpley ("Stone heirs") appeal two

orders of the Washington County Circuit Court quieting title to Fayetteville property in

Washington Regional Medical Center ("WRMC") and granting summary judgment in

favor of WRMC. For reversal, the Stone heirs present six allegations of error. We affirm.

## I. *Facts*

On September 8, 1906, Stephen K. Stone and Amanda Stone ("the Stones"), the original grantors, conveyed to the City of Fayetteville ("City") a block of property upon which to build a hospital. Their warranty deed ("the 1906 Deed") contained a reversionary clause in favor of the Stones or their heirs. This reversionary interest would trigger if the City failed to have a hospital constructed upon the property and in operation within four years from September 8, 1906, or if the property should at any time not be used and maintained for hospital purposes. The 1906 Deed further established a Board of Control to manage the hospital.

The Stones amended their 1906 Deed by filing a second deed ("the 1909 Deed") on February 24, 1909. The 1909 Deed recited that its stated purpose was to revise "certain conditions providing for a reversion of the premises which may tend to retard the establishment and maintenance of said hospital." The 1909 Deed recognized the City's failure to adhere to the terms of the first deed and added a condition that if the hospital's location changed, the proceeds of the property would constitute a charitable trust for the maintenance of the hospital at a new location.

In 1912, the hospital opened as Stone Hospital. In 1914, that hospital reorganized as Fayetteville City Hospital ("FCH") and operated as a charitable corporation. On April 30, 1914, the Washington County Circuit Court entered a decree approving certain articles of association of FCH, which was the successor to the Board of Control. These articles incorporated the terms of the 1909 Deed. From 1906 to 1978, the City owned and held legal title to the FCH property. In 1978, the City conveyed the property to FCH by

resolution of the city council. In 1991, FCH conveyed the property by quitclaim deed back to the City, and FCH continued to operate the facility.

In 2010, the City offered $172,500 to WRMC for a one-acre piece of property to construct a roundabout to ease traffic congestion. Thomas J. Olmstead, WRMC's general counsel, responded by sending a memorandum to the City expressing a desire to acquire the property and offered to exchange the roundabout site for the trust property. WRMC and the City agreed to the land swap. The City conveyed the FCH property to WRMC, and WRMC conveyed an acre of its property to the City for the construction of the roundabout.

On July 15, 2014, WRMC filed a petition to quiet title in the FCH property. In its petition, WRMC claimed to be the legal owner of the property after having acquired fee-simple title from the City by quitclaim deed and filed of record. WRMC alleged that it had been in continuous and exclusive possession and use of the property with no adverse occupants since October 13, 2013. The Stone heirs responded that title should be quieted in them because the City had failed to establish and operate the Stone Hospital pursuant to the terms of the charitable trust and that the City's actions constituted a rejection of the trust. The Stone heirs also asserted a counterclaim for breach of trust, sought to quiet title, and moved to dismiss WRMC's petition for failure to join indispensable parties. The circuit court denied the Stone heirs' motion to dismiss and found that the City was an indispensable party to the action.

WRMC and the City moved for summary judgment. Following a hearing, the circuit court granted WRMC's motion for summary judgment, quieted title in WRMC,

SLIP OPINION

dismissed with prejudice the Stone heirs' counterclaim, granted the City's motion for summary judgment, and dismissed with prejudice the Stone heirs' cross-claim against the City. The circuit court ruled as a matter of law that the 1906 and 1909 Deeds were clear and unambiguous and that WRMC had satisfied the elements of a quiet-title action. Additionally, in its decree quieting title, the circuit court ruled that WRMC had acquired fee-simple title from the City and was the legal owner of the property; that WRMC had been in continuous and exclusive occupancy, possession, and control of the property since 2011; that the requisite statutory notices had been properly served; and that WRMC had met the requirements to quiet title pursuant to Arkansas Code Annotated sections 18-60-501 to -511 (Repl. 2015).

The Stone heirs appealed the circuit court's orders to the court of appeals, which affirmed. *Stone v. Washington Reg'l Med. Ctr.*, 2016 Ark. App. 236, 490 S.W.3d 669. The Stone heirs filed a petition for review, which we granted. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766.

## II. *Arguments*

On appeal, the Stone heirs present six allegations of error. We discuss them in tandem as (1) whether the language in the 1906 and 1909 Deeds created a trust property reverting back to the Stone heirs; (2) whether the Stone heirs had standing to assert any interest in the property; (3) whether WRMC met its burden of proof in its quiet-title action; and (4) whether FCH was an indispensable party to WRMC's quiet-title action.

SLIP OPINION

A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, 488 S.W.3d 513. The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Talbert v. U.S. Bank*, 372 Ark. 148, 271 S.W.3d 486 (2008). The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Walls v. Humphries*, 2013 Ark. 286, 428 S.W.3d 517.

On appellate review, this court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Lipsey v. Giles*, 2014 Ark. 309, 439 S.W.3d 13. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Hotel Assocs., Inc. v. Rieves, Rubens & Mayton*, 2014 Ark. 254, 435 S.W.3d 488.

### A. Stone Heirs' Interest

#### 1. *Construction of the deeds*

First, we examine the language of the 1906 and 1909 Deeds to determine whether the Stone heirs have any reversionary interest in the property. They contend that the circuit court erred in granting summary judgment and ruling that, as a matter of law, the 1909 Deed released their possibility of reverter expressly provided for in the 1906 Deed.

This issue requires this court to construe the language of the 1906 and 1909 Deeds. The basic rule in the construction of deeds is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language of the deed. *Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, 428 S.W.3d 430; *Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974). The intention of the parties must be gathered from the four corners of the instrument itself, if that can be done, and when so done, it will control. *Gibson*, 256 Ark. 1035, 512 S.W.2d 532. The intention of the parties is to be gathered not from some particular clause, but from the whole context of the agreement. *Id.* Every part of the deed should be harmonized and reconciled so that all may stand together and none be rejected. *Barton Land Servs.*, 2013 Ark. 231, 428 S.W.3d 430. We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful. *Id.* In Arkansas, we recognize a presumption that a grantor intends to convey his entire interest by his deed. *Id.*, 428 S.W.3d 430. But a grantor may convey a particular interest, and, when this is done, only that interest is conveyed, and the grantor reserves to himself all he has not conveyed. *Id.*, 428 S.W.3d 430.

Further, in construing the deeds, we must also determine whether the Stone heirs held a reversionary interest in the property. This court has defined reversion as the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. *Wilson v. Pharris*, 203 Ark. 614, 158 S.W.2d 274 (1941). We have stated that, unlike a remainder, which must be created by deed or devise, a reversion arises only by operation of law. *Id.*, 158 S.W.2d 274. The grantor being a

SLIP OPINION

SLIP OPINION

reversioner in point of time can dispose of the fee absolutely by will or by deed. *Id.*, 158 S.W.2d 274.

The 1906 Deed states as follows:

> This conveyance is a gift to the City of Fayetteville, as a testimonial of our affection for the people among whom have passed our lives, and for the purpose of enabling the City of Fayetteville to establish and to maintain permanently a Hospital, which shall be known as the Stone Hospital, and is made on the following express terms and conditions:
>
> First – if the City of Fayetteville shall fail to have a Hospital established and put in operation on the land hereby conveyed within four years from the date of this conveyance the title to said land shall revert to us or to our heirs.
>
> Second:  If a Hospital shall be established on the said lands within four years after the date of this conveyance and shall at any future time be abandoned or ceased to be used and maintained for Hospital purposes then the title to the said real estate shall revert to us or our heirs.

Thus, according to the 1906 Deed, the property would revert from the City to the Stones if two terms and conditions were not met. First, the property would revert to the Stones if the City failed to establish "and put in operation" a hospital on the FCH property within four years of the conveyance. Second, the property would revert to the Stones if the hospital became "abandoned or ceased to be used and maintained for Hospital purposes."

The issue then is whether the reversionary interest of the 1906 Deed was extinguished in the 1909 Deed, which contains the following language:

> WHEREAS, said parties of the first part [the Stones], on the 8th day of September 1906 by their deed of gift of that date conveyed unto said party of the second part [City of Fayetteville, Arkansas] . . . [the Trust Property] . . . as a testimonial of the affection of said grantors for the people among whom they have passed their lives, and for the purpose of enabling said city to establish and permanently maintain a Hospital: and,
>
> WHEREAS, in the said deed of September 8th, 1906 there are certain conditions providing for a reversion of the premises which may tend to retard the establishment and maintenance of said Hospital.
>
> Therefore, the said parties of the first part in consideration and of one dollar to them paid by said party of the second part, and for the purpose of more effectually

securing to said city and its inhabitants the benefits of such Hospital, do hereby grant, bargain, sell and convey unto said party of second party, the lands and premises above described to be by the said city, held in trust and maintained as a city Hospital. And in the case it should be determined hereafter to change the location of said Hospital, to some other point in said city, in such case the entire proceeds of the above described premises shall constitute a trust fund to be devoted exclusively to the establishment and maintenance of such City Hospital at the point selected; and no such change of location shall be made except by the concurrent action of the board trustees named in said deed of September 8, 1906 (or their successors in trust) and the council of said city.

Prior to the 1909 Deed, the Stones only possessed a reversionary interest that could be released. Indeed, they released that reversionary interest by creating a charitable trust of the property to be "held in trust and maintained as a city Hospital" with the condition to establish another hospital in the event that the location changed. The final paragraph does not contain a possibility of reverter, and given the absence of such language, we agree with the circuit court's ruling that the 1909 Deed effectively released and terminated any reversionary interest of the Stones that was created in the 1906 Deed. Thus, as a matter of law, we hold that the circuit court properly ruled that the 1906 and 1909 Deeds were clear and unambiguous and that the 1909 Deed terminated the possibility of reverter contained in the 1906 Deed, thereby terminating the Stone heirs' interest in the property.

## 2. *Standing*

The Stone heirs also assert, as an alternative argument, that the City breached its fiduciary duties in its administration of the 1909 Deed's charitable trust. In their brief, they make numerous allegations of "legal maneuvering" on the part of WRMC. They cite Arkansas Code Annotated section 28-73-405(c) (Repl. 2012), the statute concerning the enforcement of a charitable trust, in support of their position.

When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153. This court has stated that in creating a charitable trust, the settlor must describe a purpose of substantial public interest. *Kohn v. Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984). "The settlor of a charitable trust, among others, may maintain a proceeding to enforce the trust." Ark. Code Ann. § 28–73–406(c).

In this instance, the Stone heirs' argument is misplaced because they are not the settlors who established the charitable trust in the 1909 Deed. Nor are they the "among others" contemplated in section 28–73–406(c) because they, as the settlors' heirs, no longer possess an interest in the property. We therefore conclude that they have no legal standing to argue any issues concerning the enforcement of the charitable trust.

## B. WRMC's Quiet-title Action

### 1. *WRMC's burden of proof*

Next, we turn to the issue of whether WRMC met its burden of proof in the quiet–title action. A prima facie case to quiet title requires a showing that the plaintiff has legal title to the property and is in possession. *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000). In an action to quiet title, the plaintiff has the burden of establishing his or her title to the land. *Id.*, 19 S.W.3d 603.

We agree with the circuit court's ruling that WRMC made a prima facie case of quieting title because it provided evidence of both legal title and possession.[1] First, in

---

[1] The dissent misstates the majority opinion in two respects. First, the dissent claims that the Stone heirs lack standing to raise the argument that WRMC did not prove the elements of its quiet-title action. WRMC, in its petition to quiet title filed July 15, 2014, named the

proving legal title, WRMC's October 6, 2011 quitclaim deed showed that WRMC acquired fee-simple title to the property from the City and that WRMC owned the property. Second, in proving possession, WRMC provided evidence that it had been in possession of the property since October 6, 2011, when it acquired legal title. The circuit court noted in its summary-judgment order that WRMC provided the affidavit of Dan Eckels, its chief financial officer, in support of its motion for summary judgment. Eckels swore that WRMC had "assumed the obligations of managing and operating the facility located on the property in 1991" and that WRMC had been in "continuous possession of the property since 1991 and ha[d] been in exclusive and continuous possession of the property since October 13, 2011, the date on which WRMC acquired the legal title to the property from the City." Based on this evidence, we conclude that WRMC satisfied the elements of legal title and possession to sustain a quiet-title action. Thus, we hold that, as a matter of law, the circuit court properly quieted title to the property in WRMC.

### 2. *Indispensable party*

Lastly, as named parties in the quiet-title action, the Stone heirs filed a motion to dismiss asserting that WRMC should have named the City and the Board of Control, later

---

Stone heirs as defendants in its quiet-title action. The circuit court subsequently quieted title in WRMC and ruled that WRMC remained the lawful owner of the property. The Stone heirs appealed. This court has long recognized the right of one who feels aggrieved by an order of a court to appeal to a higher tribunal. *See Ark. State Highway Comm'n v. Perrin*, 240 Ark. 302, 399 S.W.2d 287 (1966). Because the Stone heirs were named parties to the underlying quiet-title action, they have standing to appeal the judgment.

Second, the dissent notes that a quitclaim deed conveys a grantor's complete interest. In its decree quieting title, the circuit court ruled that WRMC "acquired fee simple title to the property" in 2011. Further, in its order granting summary judgment, the circuit court found that "the City held fee simple title to the real property at the time it delivered its quitclaim deed . . . to [WRMC]."

known as FCH, as respondents. The circuit court denied the Stone heirs' motion to dismiss. On appeal, they argue that the circuit court erred in finding that FCH was not an indispensable party to the quiet-title action. They have not challenged the circuit court's finding on the City.

If FCH has an interest in the real property, it shall be joined as a party in the action. *See* Ark. R. Civ. P. 19 (2016). Here, WRMC attached to its petition to quiet title an exhibit of a resolution, passed on July 18, 2011, that FCH liquidated and dissolved as a nonprofit corporation. As a nonentity, FCH would not have had an interest in the action. For this reason, we hold that the circuit court did not err in ruling that FCH was not an indispensable party to the quiet-title action. Accordingly, we affirm on this issue.

Affirmed; court of appeals opinion vacated.

BAKER and HART, JJ., concur in part; dissent in part.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** I concur with the majority's conclusion that the Stone heirs had no interest in the property and that the Stone heirs did not have standing to argue any issues relating to the enforcement of the charitable trust. I respectfully dissent, however, from the majority's decision to nevertheless address the arguments raised by the Stone heirs challenging the circuit court's decision to quiet title. In a procedurally similar case, *Arkansas Annual Conference of the AME Church, Inc. v. New Direction Praise & Worship Ctr., Inc.*, 375 Ark. 428, 291 S.W.3d 562 (2009), a plaintiff sought to quiet title in certain real property and to eject the defendant from the property. This court ruled that because the defendant "had no right, title, or interest in the real property at issue," the defendant lacked standing to challenge the circuit

court's decision relating to the validity of conveyance of the property to the plaintiff, and the court declined to address its arguments. *Id.* at 438, 291 S.W.3d at 569. Similarly, the Stone heirs had no right, title, or interest at stake. Thus, the majority need not address the remaining arguments raised by the Stone heirs challenging title to the property. The majority's rulings on the issues are nothing more than dicta and in effect advisory. We do not answer academic questions or issue advisory opinions. *Hampton v. State*, 2014 Ark. 303, at 7, 437 S.W.3d 689, 693. The case relied on by the majority to support its decision to address the merits of the arguments, *Arkansas State Highway Commission v. Perrin*, 240 Ark. 302, 399 S.W.2d 287 (1966), stands for the proposition that a party may appeal from a county court to a circuit court a decision requiring it to pay damages. Thus, the case is not on point.

Moreover, the majority's analysis of the quiet-title issue is wrong for two reasons. First, the majority holds that Washington Regional Medical Center (WRMC) made a prima facie case of quieting title because a 2011 quitclaim deed showed that WRMC acquired fee-simple title to the property from the City of Fayetteville (City).[2] The 1909 deed, however, conveyed the reverter interest to be held in trust by the City. Because the City held only a reverter interest, the City could not have granted fee-simple title to WRMC.

---

[2]A quitclaim deed is a "deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." *Deed*, *Black's Law Dictionary* (10th ed. 2014). The definition further notes that a quitclaim deed purports to convey only the grantor's present interest in the land, if any, rather than the land itself.

Second, the majority asserts that WRMC had adversely possessed the property since 2011. Arkansas Code Annotated section 18-60-506 (Repl. 2015) provides, "If the petitioner cannot show a perfect claim of title to any particular tract or tracts of land, it shall be held to constitute a prima facie title if the petitioner shall show that: (1) The petitioner and those under whom he or she claims, have had color of title to the land for more than seven (7) years; and (2) During that time the petitioner or those under whom he or she claims, have continuously paid the taxes thereon." WRMC has not had color of title for seven years. Furthermore, WRMC cannot add to its adverse-possession claim any time that the City claimed title because the City as a trustee cannot hold adversely to the grantor or to the beneficiaries. *Culberhouse v. Shirey*, 42 Ark. 25, 28 (1883).

BAKER, J., joins.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by:  *R. Ray Fulmer*, *Victor L. Crowell*, and *Joseph Karl Luebke*, for appellants.

*Kit Williams* and *Blake Pennington*, for appellee City of Fayetteville.