2017 Ark. App. 703

**Robert VANMATRE and Tina VanMatre, Appellants**

v.

**Larry DAVENPORT and Jason Davenport, Appellees**

No. CV–17–453

Court of Appeals of Arkansas, DIVISION IV.

Opinion Delivered: December 13, 2017

Rehearing Denied January 24, 2018

---

Ronald P. Kincade, Mountain Home, for appellants.

Benjamin A. Gibson, Yellville, for appellees.

WAYMOND M. BROWN, Judge

Appellants Robert and Tina VanMatre appeal from the order of the Marion County Circuit Court granting appellees Larry and Jason Davenport injunctive relief prohibiting appellants from any use of the easement granted to the appellees and finding that the appellants were responsible for replacing a fence they removed from the easement. Appellants argue on appeal that the trial court's interpretation that the easement was exclusive was in error as well as the court's determination

that appellants were responsible for the restoration of a fence they removed from the easement property. We reverse and remand.

This case involves a twenty-five-foot easement appellees inherited when they purchased property from their predecessor, Charles W. Halliday. Halliday had purchased the land from Timothy Killebrew, and as part of their agreement, Halliday was to put up a fence to keep Killebrew's cattle off the easement. When appellees purchased the land, the fence was still erected. At some point, appellants removed the fence and appellees filed a petition for injunctive relief against appellants for removing the fence and coming onto the easement property.

At trial, Halliday testified that the fence had been there for eight or nine years. He stated that without the fence, Killebrew's cattle would not stay in the field. He testified that it would be hard for him to say whether the removal of the fence would expose the easement to damage, other than the appellants not being able to pasture and use their property without the fence. Halliday admitted that the fence's removal did not impair ingress and egress to the appellees' property. He stated that he sold the land and fence to appellees, but admitted that the easement did not say anything about the fence, which was a private agreement between him and Killebrew.

Appellee Larry testified that he purchased his property in either 2008 or 2009. He stated that at the time, appellants were running cattle on the adjacent land. He testified that it was his understanding that the fence's purpose was to keep cows off the easement. He said that prior to the fence's removal, he and appellant Jerry had a conversation about the fence in which Jerry expressed an interest in using the grass of the easement. He stated that he had told Jerry that maybe they could work something out, but the fence was subsequently removed without his permission. He testified that his problem with the fence's removal was that he believed it would cause a problem in the future with Jerry. He said that he did not think that he and the appellants were going to be able to get along and that he wanted the fence back up because that is how it was. He also stated that he would not have purchased the property if he had known that it was not his "own place to drive in and out of there." He said that he did not want to have to deal with anyone else, and that he just wanted to "turn off at [his] gate and . . . go onto [his] property." He admitted that there were no cattle on the easement.

On cross-examination, Larry stated that the appellants did not erect the fence on the easement. He complained that Jerry burned trash to the right of the easement. He maintained that when he purchased the property, his deed stated that he had a permanent exclusive easement, which he took as being his. He admitted that appellants had never blocked the easement, run cattle on it, or interfered with his use of the easement.

On redirect, Larry stated that he did not live on the property but that he purchased it so that he and his sons could go out there and hunt or whatever they wanted to do. He stated that he was not at the property a lot.

On recross, Larry testified that he believed the fence was up nearly seven years before appellants tore it down. However, he stated that he was unaware if Halliday built the fence before Halliday owned the property.

The trial court issued a decree on February 27, 2017, granting appellees' petition for injunction against appellants, ordering

appellants to restore the fence they removed within [4]forty-five days, and granting appellants a limited right to enter the easement to restore the fence. Appellants filed a timely notice of appeal on March 8, 2017.[1]

■ Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[3]

The deed in this case granted a "permanent and exclusive twenty-five (25) foot wide easement for ingress-egress and utilities." Appellants maintain that, as long as they are not interfering with the purpose of the easement, they may enjoy the twenty-five feet also. However, appellees contend that since the deed contains an exclusive grant in the language, the easement excludes appellants from any use or enjoyment of the twenty-five feet.

In *Howard v. Cramlet*,[4] this court held: The rule in this state is that the owner of an easement may make use of the easement compatible with the authorized use so long as the use is reasonable in light of all facts and circumstances of the case. The owner of the servient tenement may make any use thereof that is consistent with, or not calculated to interfere with, [5]the exercise of the easement granted. 3 Tiffany, Law of Real Property, § 811 (3rd ed. 1939); *see Natural Gas Pipeline Company of America v. Cox*, 490 F.Supp. 452 (E.D. Ark. 1980).

■ The basic rule in the construction of deeds is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language of the deed.[5] The intention of the parties must be gathered from the four corners of the instrument itself, if that can be done, and when so done, it will control.[6] The intention of the parties is to be gathered not from some particular clause, but from the whole context of the agreement.[7] Every part of the deed should be harmonized and reconciled so that all may stand together and none be rejected.[8] We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful.[9]

■ Although the easement deed contained the words permanent and exclusive, it also contained a limited purpose of ingress-egress and utilities. Thus, based on the four corners of the instrument, it was not the parties' intent to create an easement to the exclusion of the servient estate. Therefore, appellants could use and

---

1. Appellants also filed a motion for new trial and a brief in support of the motion on the same day. Appellees filed a response on March 22, 2017. The court never ruled on the motion, and there was no amended notice of appeal to cover the deemed denial of that motion.

2. *Paschal v. Paschal*, 2011 Ark. App. 515, 2011 WL 3925381.

3. *Id.*

4. 56 Ark. App. 171, 939 S.W.2d 858 (1997).

5. *Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, 428 S.W.3d 430; *Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974).

6. *Gibson*, 256 Ark. 1035, 512 S.W.2d 532.

7. *Id.*

8. *Barton Land Servs.*, 2013 Ark. 231, 428 S.W.3d 430.

9. *Id.*

enjoy the easement so long as they did not interfere with appellees' use of the easement. Here, appellees testified that appellants had not interfered with their use of the easement. We hold that the trial court erred in finding an exclusive easement in this case and reverse. However, we remand to the trial court to consider whether appellants are still responsible for the restoration of a the fence in light of our decision.

Reversed and remanded.

Virden and Glover, JJ., agree.