Cite as 2026 Ark. 55

# SUPREME COURT OF ARKANSAS

**No.** CV–23–8

| | |
|---|---|
| RELYANCE BANK, N.A.<br><br>APPELLANT<br><br>V.<br><br>STEVE PHARR AND SIMMONS BANK<br><br>APPELLEES | **Opinion Delivered:** March 19, 2026<br><br>APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CV-20-44]<br><br>HONORABLE ROBERT H. WYATT, JR., JUDGE<br><br><u>AFFIRMED; COURT OF APPEALS' OPINION VACATED</u>. |

**RHONDA K. WOOD, Associate Justice**

Relyance Bank's agent told a title company that Relyance would release its mortgage on certain real property. As a result, Simmons Bank loaned Steve Pharr the money to buy the apparently unencumbered property. Years later, Relyance sued and tried to enforce its lien against Simmons Bank and Pharr. On summary judgment, the circuit court dismissed Relyance's lawsuit based on equitable estoppel. We affirm because no disputed material facts exist and because the court correctly applied estoppel to bar Relyance's claim.

I. *Facts and Procedural History*

In January 2015, Wayne Caldwell and Patricia Thompson ("Caldwell")[1] borrowed $1.9 million from Relyance Bank. In exchange, they executed a mortgage on 757 acres of real property. About a year later, Caldwell sold 220 acres of the property to Steve Pharr for

---

[1]We refer solely to Caldwell throughout as Relyance later entered into an agreement with Patricia Thompson and voluntarily dismissed her from the lawsuit.

around $760,000. Pharr borrowed the purchase money from Simmons Bank and executed a mortgage giving it a lien on the acreage. During the closing process for this transaction, Vince Stone, a Relyance vice president and agricultural loan officer, told the title company that Relyance would release its mortgage. Thus, the title company cut a check for the proceeds to Caldwell and then Stone's executive assistant deposited the proceeds from the sale into Caldwell's business account at Relyance. Relyance and Caldwell did not use the funds for payment towards the mortgage.

At the time of the deposit, the account was overdrawn by approximately $157,000. A month before, the account had been overdrawn by over $325,000. Caldwell's deposit produced a positive account balance of approximately $385,000. Caldwell had discussed his lack of operating funds with Stone, and together they discussed selling some property to give Caldwell liquidity.

In March 2020, almost five years after the initial mortgage, Relyance sued Caldwell. Relyance brought additional claims for receivership, breach of contract, conversion, deceit, and unjust enrichment. Relyance also sued Pharr and Simmons Bank, arguing that its lien was superior to either of their interests.

Caldwell filed Chapter 7 bankruptcy that same month, prompting the automatic stay of any claims against him. The bankruptcy court then granted relief from stay only to the extent Relyance could pursue "*in rem* relief and relief for the causes of action based on contract, specifically not to include any intentional or unintentional tort actions." This allowed Relyance to pursue its state-court foreclosure and breach-of-contract action based on Caldwell's default on the loan. But the stay remained in place for the tort claims.

2

Relyance later received a default judgment against Caldwell, noting this was limited to the breach-of-contract claim.

The state-court lawsuit continued between Relyance, Simmons Bank, and Pharr. Simmons Bank and Pharr filed motions for summary judgment arguing that Relyance's claim of lien priority was barred under the doctrine of estoppel because (1) a Relyance employee had represented that Relyance would release its mortgage, and (2) Relyance could not assert lien priority in the lawsuit. The circuit court agreed and granted both motions for summary judgment.

Relyance filed a motion to set aside the judgment as well as a notice of appeal. The notice stated the following about the outstanding (tort) claims against Caldwell: "Relyance . . . abandons any pending but unresolved claims but only to the extent required by Ark. R. App. P.-Civ. 3(e)(vi)." The motion to set aside was deemed denied, and Relyance filed an amended notice of appeal to incorporate this denial, repeating the abandoned–claims language.

The matter proceeded to the court of appeals, which dismissed the appeal for lack of a final order. *Relyance Bank, N.A. v. Pharr*, 2025 Ark. App. 397, at 5. The majority held that the abandonment language in the notice of appeal was ambiguous and failed to comply with Rule 3. *Id.* There were two vehement dissents. *Id.* at 6 (Virden, J., dissenting); *id.* at 7 (Hixson, J., dissenting). We accepted the case on petition for review and now treat the case as if it were filed here initially. *Kellensworth v. State*, 2021 Ark. 5, at 4, 614 S.W.3d 804, 807.

3

## II. *Finality*

Under Rule 3, a party must abandon any pending but unresolved claims in the notice of appeal. This operates as a dismissal with prejudice of the claims. Ark. R. App. P.–Civ. 3(e)(vi). We added this requirement in 2010 to streamline the appellate process and to address a recurring finality problem. The new language requiring abandonment of pending claims was intended to limit the number of appeals that were dismissed for that finality problem—a problem that "wastes parties' and courts' scarce resources." Additions to the Reporter's Notes, 2010 Amendment. We require substantial compliance with the requirements of Rule 3(e), provided the appellee has not been prejudiced. *Mann v. Pierce*, 2016 Ark. 418, at 4, 505 S.W.3d 150, 153.

We hold that Relyance substantially complied with Rule 3(e)(vi) when it abandoned its pending claims "but only to the extent required by" the rule. This phrase "adds and deletes nothing to Relyance's abandonment–of–claims statement." *Relyance*, 2025 Ark. App. 397, at 6 (Virden, J., dissenting). If "to the extent required" meant something, it was that the rule required abandonment of the claims. And Relyance confirmed its intent to abandon in the jurisdictional statement of its brief: "And Relyance Bank, in its notice and amended notice of appeal, abandoned unresolved pending claims. Because all claims have thus been resolved, the summary-judgment orders entered . . . are final and appealable." We find this more than substantially complies with Rule 3. The tort claims were therefore deemed dismissed. No pending claims remain, and the order appealed from is final.

Nor did the automatic stay from bankruptcy affect Relyance's ability to dismiss with prejudice the claims against Caldwell, the debtor. The automatic stay triggered by filing a

bankruptcy petition operates as a stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before commencement of a case under this title." 11 U.S.C. § 362. Courts may still dismiss cases "in a manner not inconsistent with the purpose of the automatic stay." *Dennis v. A.H. Robins Co.*, 860 F.2d 871, 872 (8th Cir. 1988) (per curiam) (noting a court's jurisdiction to dismiss for failure to prosecute but reversing for other reasons). Thus, a non-bankruptcy court can authorize dismissals of an action against a defendant/debtor if the dismissal does not impose "any additional cost or risk to the bankrupt or its creditors." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 852 F. Supp. 226, 228 (S.D.N.Y. 1994) (holding that "unilateral dismissal of a claim against a bankrupt under [Rule 41] . . . assists rather than interferes with the goals of Chapter 11"). Here, Relyance chose to dismiss, by operation of law, its tort claims against Caldwell. This dismissal neither imposes costs on Caldwell nor implicates Caldwell's other creditors. Thus, it does not prevent finality.

Normally, we would remand this appeal to the court of appeals for consideration of the merits. *E.g.*, *Havner v. Ne. Ark. Elec. Coop.*, 2016 Ark. 382, at 3; *Kelly v. Kelly*, 2016 Ark. 72, at 3, 483 S.W.3d 296, 298. But this appeal has already been delayed. The circuit court entered summary judgment in September 2022. The appeal was ripe for submission to the court of appeals once Relyance filed its reply brief on September 27, 2023. But the

court of appeals did not issue its opinion until June 4, 2025.[2] The appeal should have proceeded more swiftly. Because the parties deserve a swift resolution, we decide the merits.

III. *Summary Judgment—Equitable Estoppel*

On the merits, Relyance argues the circuit court should not have granted summary judgment because disputed material facts remain outstanding. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Miracle Kids Success Acad., Inc. v. Maurras*, 2019 Ark. 146, at 3–4, 573 S.W.3d 533, 535. Once the moving party establishes a prima facie entitlement to summary judgment, the burden shifts to the non-moving party to meet proof with proof and demonstrate the existence of a material issue of fact. *Gates v. Walther*, 2023 Ark. 74, at 3–4, 665 S.W.3d 217, 219.

We have recognized four elements to equitable estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his or her conduct be acted on or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the latter must be ignorant of the true facts; and (4) he or she must rely on the former's conduct to his or her injury. *Miller Cnty. v. Opportunities, Inc.*, 334 Ark. 88, 96, 971 S.W.2d 781, 786 (1998). The principle of equitable estoppel is that when one deliberately acts or says one thing and another person, who had a right to do so, relies on it and acts accordingly, the former cannot repudiate the act or words to the injury of the latter.

---

[2]This court temporarily assumed jurisdiction of the case between February 3 and March 20, 2025.

*Merchants' & Planters' Bank v. Citizens' Bank of Grady*, 175 Ark. 417, 418, 299 S.W. 753, 754 (1927).

The first dispute on appeal involves Vince Stone's role and authority at Relyance Bank. If Stone had authority to release collateral, then his actions are imputed to Relyance. "The principal is bound by all the acts of his agent coming within the apparent scope of the authority conferred upon him." *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 239, 16 S.W.3d 531, 536 (2000). Here, no material facts exist disputing Stone's authority as Relyance's agent. Stone was a vice president and Relyance's agricultural loan officer. Relyance's president testified in a deposition that Stone had authority to release collateral. Stone confirmed this authority in his own deposition: "[A]ll loan officers had authority to release collateral." The title company interacted with Stone in his capacity as a loan officer for Relyance, and Stone admitted that he gave the title company verbal confirmation that Relyance's mortgage would be released. Simmons Bank and Pharr then relied on this representation to the title company—Simmons Bank loaned Pharr money to finance the transaction.

The only purported "dispute" is whether Stone told the title company that there was no payoff. Stone claimed he could not remember whether a payoff had been requested. But the title-company employee remembered this fact and made a contemporaneous note: "No payoff. Relyance will release per Stone." Relyance did not meet proof with proof. Stone's lack of memory on a fact fails to establish proof contradicting it, especially when established by the testimony and documentary evidence from the title-company employee. Stone did

7

not deny making the statement; he simply could not recall. Such a claim, standing alone, cannot create a disputed material issue of fact.

Relyance also argues Stone acted in his own personal interest rather than Relyance's. Despite facts that suggest Stone had a personal relationship with Pharr, the purchaser, no material facts suggest that Stone acted in a personal capacity. Indeed, the transaction benefited Relyance directly by wiping out a six-figure negative balance in Caldwell's business operating account. Stone and Caldwell discussed Caldwell's need for operating funds. The sale to Pharr both covered Caldwell's negative balance with Relyance and provided Caldwell with liquidity.

Finally, Relyance claims Simmons Bank and Pharr were unreasonable and unjustified when they relied on Stone's representations to the title company—they should have known Relyance would release its loan only through a written waiver, as stated in the mortgage. But the title-company employee testified it was common in the industry to rely on the verbal representations of a loan officer:

Q:     Had you relied on [Stone's] word before?

A:     I feel sure that I did. . . . I knew he was a person of Relyance Bank in that authority that should have been able to have given me the authority for a payoff. That would have been my normal practice.

Relyance presents no additional evidence on appeal that would create a material fact question on this point.[3]

---

[3]Relyance seems to rest on that best practice would have been to get a signed release; perhaps this is true. Yet that was a decision by the nonparty title company.

The summary-judgment procedure distills the factual record down to disputed facts to be adjudicated at trial; if no disputed facts exist, the court can decide the case on the paper record. *See Stone v. Washington Reg'l Med. Ctr.*, 2017 Ark. 90, at 5, 515 S.W.3d 104, 108. Here, the transactions were straightforward and the material facts were not in dispute. This lawsuit was ripe for disposition on summary judgment. And given those undisputed material facts, the circuit court correctly applied the blackletter principle of estoppel: Relyance cannot say it will release a lien and then five years later try to enforce the lien against parties who relied on that representation. We therefore affirm the circuit court's dismissal of Relyance's complaint based on equitable estoppel.[4]

Affirmed; court of appeals' opinion vacated.

WOMACK and WEBB, JJ., concur.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Campbell & Grooms, PLLC*, by: *Kendel Grooms* and *Parker Spaulding*, for appellant.

*Barton & Roper, PLLC*, by: *Whit Barton*, for appellee Steve Pharr.

*McMullan & Brown*, by: *Amy Clemmons Brown*, for appellee Simmons Bank.

---

[4]Relyance claims the statute of frauds should preclude the equitable-estoppel defense. This is an incorrect statement of law. An act of reliance, an element of estoppel, can defeat the statute of frauds. *Tilley v. Malvern Nat'l Bank*, 2025 Ark. 29, at 10, 709 S.W.3d 31, 40; *Van Dyke v. Glover*, 326 Ark. 736, 745, 934 S.W.2d 204, 209 (1996). Relyance also claims that Simmons Bank and Pharr improperly raised new arguments in reply to summary judgment—that the title company was their agent and that Relyance would get a windfall if it wins the case. Neither of these arguments is the basis for our decision to affirm, so they are moot.