Cite as 2020 Ark. App. 532

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–20–125

| | | |
|---|---|---|
| DAVID KING | | **Opinion Delivered:** November 18, 2020 |
| | APPELLANT | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. 71CR-16-48] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE H.G. FOSTER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant David King was convicted by a Van Buren County jury of possession of methamphetamine with purpose to deliver, simultaneous possession of drugs and firearms, and possession of drug paraphernalia. The jury sentenced him to an aggregate term of twenty-eight years' imprisonment. On appeal, King argues that the trial court erred by (1) refusing to order the State provide a video recording of the search of King's home; (2) ruling that the filmmakers were not state actors; (3) denying King's request for a continuance to obtain the video; (4) denying King's motion to suppress evidence stemming from the execution of the search warrant; and (5) declining to give the affirmative-defense instruction to the jury. We affirm.

In March 2016, the Twentieth Judicial Drug Task Force along with several other law enforcement officers executed a warrant for the search of King's home. An HBO film crew was also present at the search collecting footage for the documentary *Meth Storm*. Upon

making entry into the house, King advised officers of a camouflage box located in his bedroom that he knew contained methamphetamine. As an officer bent down to retrieve the box, he located a handgun lying next to the box. Officers found over three grams of methamphetamine in the camouflage box along with a pay/owe book, a digital scale, half a straw with residue, a spoon, and multiple Ziplock bags. Officers located two more firearms in the master bedroom and other drug paraphernalia throughout the house. During the search, King made clear that his wife, Betty King, who was also present, knew nothing of the items being found.

King was charged as a habitual offender with the crimes of possession of methamphetamine or cocaine with purpose to deliver, simultaneous possession of drugs and firearms, and possession of drug paraphernalia. King claimed that the officers violated the terms and conditions of the search warrant by forcibly entering his home before the allotted time frame. To prove this claim, King filed a motion to compel discovery of the video recording filmed by the documentarians, but the court denied the motion finding that because the State was not in possession of the recording, it was not required to turn it over. After obtaining new counsel, King filed a motion to suppress the evidence procured during the search arguing that the search warrant in the case specified that the search was to be conducted between the hours of 6:00 a.m. and 8:00 p.m. and that despite the return of the warrant indicating that the search began at 6:03 a.m., King maintained that officers began the search several minutes before 6:00 a.m.

At the hearing on the motion, Agent Macy Brown, the lead agent who executed the search, testified that it began at 6:03 a.m. based on the time he saw on the dashcam clock in

his vehicle when he pulled into the driveway. King and his wife testified that officers were inside the home when Agent Brown told everyone to stop what they were doing because they were early. Neither King nor his wife could provide a time when officers arrived or when Agent Brown made everyone stop. King maintained that the video recording would reveal the true time. At the conclusion of the hearing, the court denied the motion, again rejecting that the State had any responsibility for HBO's compliance with King's request for the recording, and it found that Agent Brown's testimony that the warrant was executed in a timely fashion was more credible than that put on by the defense. Upon the court's ruling, King moved for a continuance of the jury trial so that he may have another shot at trying to retrieve the footage from HBO. The court stated that the case had been going on since 2016 and asked him what had previously been done to retrieve the footage, but King was unsure. The court then denied the request.

A jury trial was conducted September 17, 2019. Charles Shaw, an investigator who was present during the execution of the search warrant, testified that he was the one who located the camouflage box and the gun in the bedroom, but he did not recall King's wife being present during the search. Agent Brown then testified about what was found during the search and that King's wife was, in fact, present. He also testified that after the search, he detained King, King waived his *Miranda* rights, and Agent Brown conducted an interview. He testified that during the interview, King admitted that he had just bought a thousand dollars' worth of methamphetamine the day before and that he used between half and a quarter each day. Agent Brown testified that he did not find a thousand dollars' worth of methamphetamine in the house and that in his experience, King's admitted use was a

3

typical answer of a regular user. King moved for directed verdict at the close of the State's case in chief, arguing that the State failed to meet the elements of the simultaneous-possession-of-drugs-and-firearms charge. The trial court denied the motion. The defense rested without calling any witness and renewed its motion, which the court again denied. Prior to jury deliberation, King sought to have a jury instruction for the affirmative defense for the charge of simultaneous possession of drugs and firearms, arguing that the firearm was not readily available for use. Finding that there was no factual basis from which the jury could find that the firearm was not available for use because the gun was in close proximity with the drugs and paraphernalia in the bedroom, the court denied King's request. King was convicted and has now timely appealed.

Questions of law, such as the interpretation of discovery rules found in the Arkansas Rules of Criminal Procedure, are reviewed de novo. *Muhammad v. State*, 67 Ark. App. 262, 265, 998 S.W.2d 763, 763 (1999). However, when we review a court's rulings regarding alleged violations of the rules of discovery, the standard of review is abuse of discretion. *Hicks v. State*, 340 Ark. 605, 612, 12 S.W.3d 219, 223 (2000).

On appeal, King first argues that the trial court erred in ruling that the State was not responsible for providing him with the HBO video footage. King maintains that the video could lead to exculpatory evidence to support his motion to suppress that the officers executed the warrant outside the proper timeframe. King asserts that it was an abuse of discretion for the trial court to find that because the State did not possess the video that it did not have to provide the video. King asserts that, at a minimum, the trial court should have ordered the State to make diligent efforts to obtain the footage or information relating

4

to the individuals who recorded the video. To support his argument, King states that the court made its finding in violation of Arkansas Rules of Criminal Procedure 17.1, 17.3, and 17.4; *Barrow v. State*, 2010 Ark. App. 589, 377 S.W.3d 481; and *Brady v. Maryland*, 373 U.S. 83 (1963).

In a recently decided case involving similar facts, the Arkansas Supreme Court held that the HBO filmmakers invited onto the scene of a search to film for their documentary *Meth Storm* were not law enforcement or acting as state agents. *Harmon v. State*, 2020 Ark. 217, 600 S.W.3d 586. The appellant in *Harmon* made similar arguments as King. There, the appellant acknowledged that the State did not have an affirmative duty under *Brady*, 373 U.S. 83, to produce evidence it does not have, but he argued that under Rules 17.1 and 17.4 of the Arkansas Rules of Criminal Procedure, the State was obligated to obtain the footage and the identities of the filmmakers. *Id*. at 4, 600 S.W.3d at 590. Rule 17.1(c) provides in relevant part that "[t]he prosecuting attorney shall, upon timely request, disclose and permit inspection, testing, copying, and photocopying of any relevant material regarding (i) any specific searches and seizures." Rule 17.4(a) provides that "[t]he court in its discretion may require disclosure to defense counsel of other relevant material and information upon a showing of materiality to the preparation of the defense."

In disagreeing with the appellant that Rule 17 does not require it to produce the video, our supreme court analogized the case to *Barrow*, 2010 Ark. App. 589, 377 S.W.3d 481. Specifically, the court explained:

> In *Barrow*, there was evidence of the victims' medical treatment at area hospitals that the State did not disclose to the defense. The court of appeals held that "[b]ecause the medical facilities are not law-enforcement agencies, the prosecutor had no obligation to obtain the records under Rule 17.3. In the absence of a showing . . .

5

> that the State had access to the records, no discovery violation occurred." *Id.* at 15, 377 S.W.3d at 491. . . . [T]he evidence held by the filmmakers is akin to evidence held by the hospitals in *Barrow*.

*Harmon*, 2020 Ark. 217, at 7, 600 S.W.3d at 591. *Harmon* recognized that information held by the police is imputed to the prosecution, but because the State did not possess the video, there was no discovery violation. *Id.*, 600 S.W.3d at 591. King urges us to reconsider this holding, but we are without authority to overrule decisions made by the supreme court. *Roark v. State*, 46 Ark. App. 49, 55, 876 S.W.2d 596, 599 (1994).

Alternatively, King distinguishes his case from *Harmon* by noting that he specifically asked for the information pursuant to Rule 17.3, which was not argued by the appellant in *Harmon*. Arkansas Rule of Criminal Procedure 17.3 provides in part that "[t]he prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney." King argues that the trial court should have ordered the State to use diligent efforts to gather information possessed by the police that would lead to the discovery of the video.

This is not a significant distinguishing factor. In reaching its conclusion, the *Harmon* court touched on Rule 17.3. *Harmon* relied on *Barrow*, which held that the medical facilities were not law enforcement agencies contemplated by the rule. This, coupled with the fact that the State did not have access to the medical records, led the *Barrow* court to conclude no discovery violation had occurred. Consequently, *Harmon* held that the evidence held by the filmmakers is akin to evidence held by the hospitals and that the filmmakers were not law enforcement officers, nor were they acting as state agents. Essentially, *Harmon* suggests

that the HBO filmmakers were not considered "other governmental personnel" per Rule 17.3. For these reasons, we conclude that the trial court did not abuse its discretion in declining to order the State to obtain the video or to gather information that would lead to the video.

Next, King argues that the trial court erred in finding that the filmmakers were not agents of the State, and therefore the State did not have to provide the video. King maintains that because the State admitted that the film crew had permission to be present during the search, an agreement, either oral or written, must have existed giving rise to an agency relationship.

A party asserting the existence of an agency relationship has the burden of proving that an agency relationship exists. *Hardin v. Bishop*, 2013 Ark. 395, at 7, 430 S.W.3d 49, 54. The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Id.* Agency can be proved by circumstantial evidence if the facts and circumstances introduced into evidence are sufficient to induce in the mind of the finder of fact the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. *Id.*

In *Harmon*, the appellant similarly argued that because the filmmakers were state actors or agents, the State had an obligation to obtain the video and identify who was present at the search. *Harmon*, 2020 Ark. 217, at 5, 600 S.W.3d at 590. In finding that the appellant failed to provide convincing authority to support this contention, the supreme court held that while the filmmakers were more than mere bystanders because they were present at the

7

invitation of law enforcement, that did not make them state actors or agents, especially considering that they did not participate in the search. *Id*.

To distinguish this case from *Harmon*, King asserts that while there is no case law directly on point, the fact that the filmmakers did not participate in the search is incorrect. King claims they did participate in the search by filming it, which is a duty normally held by law enforcement. King argues that because law enforcement permitted HBO to record the search, law enforcement gave the filmmakers the authority to act on their behalf. We disagree with this characterization.

King does not establish that HBO filmed the raid in place of law enforcement or that law enforcement would have filmed the raid if HBO had not been present. The filmmakers were filming for their own benefit, not to aid law enforcement in the search. Because the facts do not establish that HBO was acting for law enforcement, we agree with the trial court that an agency relationship did not exist.

For his third argument, King contends that the trial court erred in denying his request for a continuance to allow more time to obtain the video. The original criminal information against King was filed on April 4, 2016. King's counsel filed a motion to compel discovery for the State to provide the video recording in December 2017. When the court denied counsel's request at a motion hearing on April 28, 2018, counsel requested more time to obtain the video herself. After several unsuccessful attempts and a handful of continuances later, counsel discovered she had a conflict and asked to be removed from the case in November 2018. King's new counsel asked for a continuance after his motion for suppression was denied at the July 2019 motion hearing. The continuance was denied

because the court stated the case had been ongoing since 2016. King also filed a motion for continuance on September 12, 2019, noting that the Arkansas Public Defender Commission recently obtained the funds to assign an investigator to the case but that more time was needed to establish contact with the production team. That motion was also denied, and the jury trial was held September 17, 2019.

We review the denial of a continuance for abuse of discretion. *Price v. State*, 365 Ark. 25, 33, 223 S.W.3d 817, 824 (2006). A trial court should consider the following factors in deciding whether to grant a continuance: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit stating not only what facts the witness would prove but also that the appellant believes them to be true. *Miller v. State*, 328 Ark. 121, 124, 942 S.W.2d 825, 827 (1997).

The existence of the film had been known for at least a year and a half before trial, and multiple attempts were made to obtain the video. Again, this issue is similar to one presented in *Harmon*. There, the appellant made separate attempts to obtain video footage, and he, too, was unsuccessful. This weighed against the likelihood of procuring the evidence. In *Harmon*, there was even evidence that the trial court issued an order to "whomever shall be in possession and/or ownership" of the video to provide it. 2020 Ark. 217, at 3, 600 S.W.3d at 589. Here, there was no evidence that King attempted to subpoena HBO. Additionally, we would be speculating as to the probable effect of the evidence at trial, considering that the trial court found Agent Brown's testimony about the time more

9

credible than the Kings' testimony. We conclude that the trial court did not abuse its discretion in denying King's request for a continuance.

For his fourth point, King argues the trial court erred in denying King's motion to suppress the evidence stemming from the execution of the search warrant. King asserts that the State failed to meet its burden that the warrant was executed after 6:00 a.m. To support this argument, he claims that there was no testimony or evidence presented regarding the accuracy of the dashcam clock that Brown testified he relied on to determine the time of the search. King also claims that there was no corroborating evidence supporting Agent Brown's testimony regarding the time.

In reviewing the denial of a motion to suppress evidence, the appellate court conducts a de novo review based on the totality of the circumstances set forth in the affidavit and will reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Hayes v. State*, 2013 Ark. App. 725, at 5. We defer to the trial court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Livingston v. State*, 2013 Ark. 264, at 6, 428 S.W.3d 474, 478. Arkansas Rule of Criminal Procedure 13.2 provides that search warrants shall be executed between the hours of six a.m. and eight p.m. and that a search not within this time frame must be supported by a provision in the warrant by the issuing judicial officer.

In deciding to deny the motion to suppress, the trial court had before it the competing testimony between Agent Brown and the Kings regarding the time of execution of the warrant. The trial court is not required to believe the testimony of any witness, certainly not the self-serving testimony of the accused. *Collins v. State*, 2014 Ark. App. 574,

at 4, 446 S.W.3d 199, 203. King also fails to direct us to any requirement that the State needed to establish that the dashcam clock was calibrated properly or that Agent Brown's testimony needed to be corroborated. Agent Brown's testimony alone was sufficient to establish what time the search warrant was executed. We must defer to the trial court's credibility determination, and we hold that the court did not clearly err in denying King's motion to suppress.

Last, King argues that the trial court erred in refusing to instruct the jury on the affirmative defense concerning the charge of simultaneous possession of drugs and firearms. Arkansas Code Annotated section 5-74-106 (Repl. 2016) provides that no person shall unlawfully commit a felony violation of Arkansas Code Annotated section 5-64-419 (manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance) while in possession of a firearm. Subsection (d) of the statute provides that "[i]t is a defense to this section that the defendant was in his or her home and the firearm or other implement or weapon was not readily accessible for use." The trial court denied King's request finding that there was no factual basis from which the jury could find the firearm was not available for use.

This issue is not preserved for review. When the court denied King's request to instruct the jury on this affirmative defense, he did not proffer the desired instruction into the record, and as a result, we do not have it before us for review. This court has repeatedly stated that it is the appellant's duty to present to this court a record sufficient to show that the trial court erred below. *Robertson v. State*, 2009 Ark. 430, at 3, 347 S.W.3d 460, 462. To preserve for appeal an objection to an instruction, the appellant must make a proffer of

the proposed instruction to the trial court. *Id*. That proffered instruction must then be included in the record and abstracted to enable the appellate court to consider it. *Id*. An instruction that is not contained in the record is not preserved and will not be addressed on appeal. *Id*. King failed to proffer the jury instruction; consequently, it has not been made a part of the record or abstract.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Erin W. Lewis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.