Cite as 2021 Ark. App. 26

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-19-370

| | |
|---|---|
| | **Opinion Delivered** January 20, 2021 |
| LENTONIO MARCELL JENNER<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR-17-3297] |
| V. | |
| | HONORABLE MARK LINDSAY, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

After a three-day jury trial, Lentonio Marcell Jenner was convicted of aggravated residential burglary, two counts of kidnapping, aggravated robbery, second-degree battery, two counts of first-degree terroristic threatening, and being a felon in possession of a firearm. He was sentenced by the Washington County Circuit Court to twenty-two years' imprisonment. On appeal, Jenner argues that the circuit court erred in denying his motions to compel discovery to assure a fair and accurate cross section of the community for the jury and in denying his motion for an enhanced juror pool. We affirm.

Following an incident on October 13, 2017, the State charged Jenner with the above offenses. After eight continuances, Jenner's jury trial was scheduled to begin on October 16, 2018. On October 7, Jenner filed three motions. The first was a motion for an enhanced juror pool wherein Jenner, who is African American, alleged that the master list from which his jury was to be selected is unconstitutionally composed in that it underrepresents minorities in

Washington County. Jenner asserted that limiting the pool of prospective jurors to registered voters limits the participation of minorities in the judicial process, and he moved that his pool of potential jurors be expanded to include persons who have been issued a driver's license and an identification card.

The second October 7 motion filed by Jenner was a motion to assure a fair and accurate cross section of the community for the jury. In this motion, Jenner asserted that his right to a fair and impartial jury selected from a cross section of the community can be "thwarted" by the discretion of court officials who determine how and when to contact potential jurors. Jenner moved that the court officials call jurors according to the order in which the jurors were selected for jury duty. He also requested that the circuit court excuse jurors on the record in the presence of Jenner and his counsel and that the circuit court maintain written documentation of its contact with jurors.

The third of Jenner's October 7 motions was a motion to compel discovery to assure a fair and accurate cross section of the community for the jury wherein he requested information on the racial or ethnic demographics of potential jurors in the current venire along with the demographics of the jurors who had been summoned for his trial. This motion also requested details regarding the jury-pool-selection process and software for creating a venire and selection for specific jury trials; the clerk's office's policy on the methods of contacting and recontacting potential jurors; and a copy of the yearly administrative circuit judge's determination on whether the enhanced prospective jury list should be used by Washington County.

On October 11, the circuit court entered an order directing the Washington County Circuit Clerk's office to provide Jenner with the list of the jurors called for his October 16 trial

along with their questionnaires. On October 15, Jenner amended his motion to compel discovery to assure a fair and accurate cross section of the community for the jury. Jenner's counsel stated that he had spoken with Pam Penn, the jury-selection coordinator for Washington County, and Tracy Smith, the county's jury-selection-software engineer, and on the basis of those conversations, counsel believes that there are specific issues in the jury-selection process that may lead to the systemic exclusion of particular groups of jurors. Jenner's amended motion requested an electronic copy of the jury-selection software and access to Penn's trial files to perform a statistical analysis to investigate whether a representative cross section of jurors is available in Washington County. He also requested a hearing on the motion.

The circuit court held a hearing on Jenner's motions on October 15. Penn, a Washington County deputy clerk, testified that she is the jury coordinator for her office and operates the jury-selection software her offices uses. She testified that a circuit clerk is assigned to each circuit court. The clerk will pull approximately six hundred names from a list of registered voters and then prepare a packet for those six hundred people that includes a letter from the assigned judge, a jury questionnaire, and a self-addressed, stamped envelope so that the questionnaire can be returned.[1] The packets are forwarded to the sheriff's office where summonses are issued and inserted, and the final packets are mailed to the six hundred potential jurors.

Penn testified that when she receives a completed questionnaire, she checks the information on it against what is in the voter-registration system, and she qualifies or

---

[1]Penn prepares the packets for Washington County Circuit Court Judge Mark Lindsay, the judge assigned to Jenner's case.

disqualifies the person. She said that if a person asks to be excused, she forwards that questionnaire to the circuit court judge. Penn further testified that if a questionnaire is returned as undeliverable, she searches the personal-property database for a more recent address and mails another questionnaire if she finds a second address. Penn stated that she has received about 257 questionnaires for the current term and will continue to receive them throughout the term. These 257 names make up the master jury list.

When a circuit court requests a jury panel of a particular size, Penn testified that she uses jury-selection software to randomly pull the desired number of jurors from the master jury list. Penn testified that the jury-selection software used by Washington County was created by Tracy Smith.[2] Once the software randomly produces the number of jurors Penn requests, she starts calling those people in alphabetical order, directing them to report to jury duty. She said that she calls during all different times of the day. She calls the listed cell number first, then the work number, and the home number last. If the person is not home, Penn said that she leaves a message, and she checks her voicemail the following morning. Penn testified that she almost always calls everyone on her list because many jurors are excused by the circuit court and that she often has to request the software to randomly pull supplemental names from the master list to fill the panel. Penn stated that there is one judge in Washington County who prefers that his panel be listed by the software by juror number and not alphabetically. She testified that the panel list is the same whether it is listed by juror number or alphabetically.

---

[2]Penn discussed a second jury-selection program that was created by the State of Arkansas but stated that it did not suit the needs of Washington County because it did not accommodate the county's four jury terms or how the county pays its jurors. She said that both programs are sanctioned by the State of Arkansas.

She testified that she does not know the person's race or ethnicity when she calls a potential juror and that she has never had anyone answer her call in Spanish.

After Penn's testimony, counsel for Jenner introduced a letter from the Washington County Circuit Court Clerk that states:

> In accordance with the provisions of ACA 16-32-303(b), please be advised that the circuit judges of the 4th Judicial Circuit have decided by unanimous vote to continue to use the list of registered voters in the selection of all prospective jurors for each division within Washington County. Accordingly, the judges have declined to use the enhanced list as set forth in ACA 16-32-302 et seq.

Jenner's counsel then argued to the circuit court that "[t]his is a discovery request" and that there is no burden for the defense to meet to be entitled to the jury-selection information. He alternatively argued that if there is a burden, it is low, and he met it because Penn's testimony showed that one circuit court judge calls potential jurors on the basis of the juror number and not alphabetically; individuals who own property are more likely to receive a follow-up contact and are more likely to serve on the jury; individuals who change their address or phone number or lose phone service are less likely to serve on a jury; a person with the same name as a convicted felon may be excluded from serving on a jury; and individuals who do not speak English as a first language may receive the questionnaire but may be difficult to reach by phone and are less likely to serve on a jury. Jenner's counsel then requested the clerk's office's last four years of jury-selection files and software data to determine whether there is systematic exclusion of distinct groups. He did not say how long he needed to analyze the information he requested.

The circuit court denied Jenner's motions, stating,

> So this is all speculative. . . . [Counsel], you haven't told me how much time you need, but whatever it is, the day before trial is not the first time to argue on the record

5

about it. . . . This case is going to trial tomorrow. . . . I'm going to deny your motion with regard to the juror selection. . . .

When questioned by Jenner's counsel whether the court's ruling was that the information was not discoverable or that Jenner failed to meet his threshold burden, the circuit court responded:

> It's not discoverable in this case because I cannot give it to you in time to do you any good on this trial, and you have not presented any evidence that you would find anything, to this Court, that showed that our jury selection process violated Arkansas or state law, constitutional or statutory.

Jenner's jury trial began the following day. There were two minorities on the jury panel and one on the jury. At its conclusion, the jury found Jenner guilty on eight felony counts, and the circuit court entered an amended sentencing order imposing a twenty-two-year sentence. This appeal followed.[3]

The question of whether Jenner was denied his Sixth Amendment right to a fair cross section is not before us. The only issue on appeal is whether the circuit court erred in denying Jenner's motions to compel discovery to assure a fair and accurate cross section of the community for the jury.[4] Jenner made this clear at the October 15 pretrial hearing and in his

---

[3]This is Jenner's third appeal. The first was a merit-based appeal wherein Jenner argued that reversal was required because the jury instructions on which the jury's verdicts were based were not filed in the circuit court and did not appear in the record. After the State supplemented the record with the jury instructions, Jenner's counsel filed a motion to file a no-merit brief, which was granted by this court on December 4, 2019. In January 2020, Jenner filed a no-merit brief and motion to withdraw as counsel. On June 3, 2020, we ordered rebriefing in Jenner's second appeal because his no-merit brief failed to comply with *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(k) of the Rules of the Arkansas Supreme Court. *Jenner v. State*, 2020 Ark. App. 338.

[4]In his points on appeal, Jenner also argues that the circuit court erred in denying his motion for an enhanced juror pool. However, he offers no argument in that regard; therefore, we do not address this second point because he has abandoned the issue on appeal. *Hale v. State*, 343 Ark. 62, 85 n.7, 31 S.W.3d 850, 864 n.7 (2000) (declaring an argument abandoned

6

briefs on appeal—he sought discovery to determine if a fair cross section challenge was required.

Jenner requested the following items in discovery: (1) information on the racial or ethnic demographics of potential jurors in the current venire; (2) information on the racial or ethnic demographics of potential jurors who had been summoned for Jenner's trial; (3) details regarding the pool-selection process and software for creating a jury venire and selection for specific jury trials; (4) the clerk's office's policy on the methods of contacting and recontacting potential jurors; (5) a copy of the yearly administrative circuit judge's determination on whether the enhanced prospective jury list should be used by Washington County; (6) if the above information is not available, Jenner requested a court order directing the clerk's office to request and compile demographic data on race and ethnicity; (7) an electronic copy of the jury-selection software program and access to Penn's individual trial files; and (8) a hearing.

The State concedes that Jenner may be entitled to receive the list of potential jurors' names and addresses pursuant to Arkansas Code Annotated section 16-32-103(e)(3)(A), (B) (Supp. 2019). However, the State claims that because the statute only allows disclosure of this limited information, the other items sought by Jenner are not discoverable as a matter of law. We disagree.

The circuit court has the discretion to order disclosure of "relevant material and information" to defense counsel "upon a showing of materiality to the preparation of the defense." Ark. R. Crim. P. 17.4(a) (2020). The court may deny disclosure authorized by subsection (a) if it finds there is a substantial risk to any person of physical harm, intimidation,

---

on appeal when the appellant mentioned it in the points on appeal but made no argument regarding it).

bribery, economic reprisal, or unnecessary annoyance or embarrassment resulting from such disclosure and that the risk outweighs any usefulness of the disclosure to defense counsel. Ark. R. Crim. P. 17.4(b). Rule 17.4 confers authority on the circuit court to require disclosure of material or information not produced under other provisions of Rule 17. *Caldwell v. State*, 319 Ark. 243, 248, 891 S.W.2d 42, 45 (1995).

Discovery in a criminal case is discretionary with the trial court. *Spencer v. State*, 285 Ark. 339, 340, 686 S.W.2d 436, 437 (1985). We review rulings regarding alleged violations of discovery rules for abuse of discretion. *Harmon v. State*, 2020 Ark. 217, at 5, 600 S.W.3d 586, 590. After a thorough review of the record, we hold that the circuit court did not abuse its discretion in denying Jenner's motions to compel discovery. First, Jenner received much of the discovery he requested. Regarding requests 1 and 2, the circuit court entered an order on October 11 that directed the clerk's office to provide Jenner with the list of the potential jurors called for the October 16 trial along with their questionnaires. Jenner's counsel stated at the hearing that he had seen the questionnaires.

Jenner's requests 3, 4, 5, and 8 were also granted. The circuit court held a hearing on Jenner's motion to compel discovery. At the hearing, Penn testified about the details of the jury-selection process and software[5] along with her policies for contacting and recontacting potential jurors. The record also demonstrates that Jenner introduced into evidence a letter from the circuit clerk advising that the judges of the Fourth Judicial Circuit had voted unanimously to use the list of registered voters in the selection of jurors and not the enhanced list.

---

[5]At the hearing, Jenner's counsel conceded that he did not "believe we would be able to get much useful information out of the [software] engineer."

Second, with respect to the information Jenner did not receive, he failed to demonstrate that the clerk's office or State actually possesses the information. For example, with regard to requests 1, 2, and 7, Jenner has failed to present a record sufficient to determine whether the questionnaires, software, and Penn's trial files contain racial and ethnic demographic information. The questionnaires are not included in the record.[6] Penn testified that when she calls an individual to report for jury duty, she does not know his or her race. Penn also testified that the only information found in the jury-selection software and in her trial files, in addition to that in the voter-registration database, is the names of the jurors who returned questionnaires and the names of those who were qualified to serve.[7]

Finally, the circuit court found that Jenner's motions to compel discovery were untimely and that Jenner "failed to provide a time frame in which such information would be analyzed so as not to impede current court proceedings . . . ." The information charging Jenner in this case was filed on November 16, 2017. There were eight continuances granted in this case, and ultimately, Jenner's jury trial was scheduled for October 16, 2018. Yet Jenner's motion to compel discovery was filed nine days before trial. The amended motion—in which Jenner requested additional discovery and asked for a hearing—was filed and heard the day before trial. Given the speculative nature of Jenner's arguments for discovery and his failure to provide the court with the amount of time needed to analyze the information requested, we

---

[6]Arkansas Rule of Criminal Procedure 32.1 (2020) governs the information required in juror questionnaires (i.e., age, marital status, extent of education, occupation of juror and spouse, and prior jury service) and does not specifically require that race or ethnicity information be included in the questionnaires.

[7]Notably, Jenner, in request 6, contemplates the possibility that the clerk's office does not possess the information and data he is seeking. In request 6, Jenner asks the court to direct the clerk's office to *begin* requesting and compiling demographic data on race and ethnicity.

hold that the circuit court did not abuse its discretion in finding that Jenner's discovery motions—filed on the eve of trial—were not timely.

In sum, the record demonstrates that Jenner received most of the information he requested in his motions to compel; what he did not receive, he failed to establish that the clerk's office or State possessed; and his discovery requests—filed on the eve of trial—were untimely. Further, the circuit court held a hearing on Jenner's motions and considered all arguments and evidence presented by Jenner in support of his motions to compel discovery. Accordingly, we hold that the circuit court did not abuse its discretion in denying Jenner's motions to compel discovery to assure a fair and accurate cross section of the community for the jury and affirm.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Armstrong Teasdale LLP*, by: *Jonathan R. Shulan*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.